## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
_____

Civil Action No. 1:05cv4974

_____

Kevin Salvadori
_____Plaintiff_____

vs.

Option One, Inc.
*Defendant*
_____


**Plaintiff's Brief in opposition to Defendant's motion to compel arbitration**
_____



LEWIS G. ADLER
26 Newton Street
Woodbury, New Jersey 08096
(856) 845-1968
Attorney for Plaintiff


Lewis G. Adler, Esquire
Roger C. Mattson, Esquire
Louis D. Fletcher, Esquire
On the Brief

## STATEMENT OF MATERIAL FACTS

1.    Kevin Salvadori entered into a Residential Mortgage transaction with the defendant, Option One, a California Corporation, on May 18, 2001, and a copy of the Mortgage, Note and Pre-Payment Rider are attached hereto along with a copy of the Complaint.(Def Exhibit A & B)

2.    The loan was paid in full on or about March 2003 at which time the Defendant sought the payment of charges which had been held by the courts to be uncollectible.

3.    In the course of closing the loan, the plaintiff was required to execute an "Agreement for the Arbitration of Disputes" (Def Exhibit D)

## PROCEDURAL HISTORY

On or about December 19, 2003, the Plaintiff filed a complaint with a jury demand in the Superior Court, Law Division. The complaint contained four counts. Count One alleged that the Defendant Option One violated **N.J.S.A. 46:10B-2** by charging a collecting a prepayment penalty upon

the pay off of the Plaintiff's mortgage with the Defendant Option One. Count Two alleged that the Defendant Option One violated **N.J.S.A. 17:3B-22** by charging and collecting a prepayment penalty upon the pay off of the Plaintiff's mortgage with the Defendant Option One. Count Three alleged that the Defendant Option One violated the Consumer Fraud Act **N.J.S.A. 56:8-2** by charging and collecting a prepayment penalty upon the pay off of the Plaintiff's mortgage with the Defendant Option One which is prohibited by law. Count Four was a notice of the Plaintiff's intention to have the action confirmed as a class action. (Def Exhibit E)

In lieu of filing an answer, the Defendant filed a motion to dismiss to compel arbitration. The Plaintiff filed briefs in opposition to the Defendant's motion. The State Trial Court heard oral argument on the motion.  The State Trial Court in a subsequent written opinion granted the Defendant's motion dismissing the Plaintiff's action in the court to be heard in arbitration.

The Plaintiff then filed an appeal. The New Jersey Appellate Division remanded the case for the Plaintiff to amend the complaint while making no findings on the arbitration issues. (Def Exhibit J)

The Plaintiff filed and served the amended complaint which included the post Glukowsky counts. (Def Exhibit A)

The Defendant removed the matter to this court and filed

the instant motion to compel arbitration.

**<u>ARGUMENT</u>**

**I . There exist judiciable issues between the parties**

**regardless of the outcome of the appeals in <u>Glukowsky v.</u>**

**<u>Equity One, Inc.</u>, *180 NJ 49 (2004)*.**

The Defendant's have filed the instant motion to compel arbitration  but have tried to allege that there remain no judiciable issues between the parties.  This simply is not the case.

There is no question that the original complaint filed in this matter alleged violations of New Jersey law concerning the collection of prepayment penalties as pled in **<u>Glukowsky</u>**.  However, these are not the only issues remaining between the parties.

**A.   The issue of this motion is to determine the**

**proper forum where a dispute should be resolved.**

The Defendant has argued that the instant case should be dismissed because as a matter of law, there is no dispute between the parties.  The concern is rather ironic as the Defendant argued before the State Court that any dispute would have to be resolved in Arbitration.

The issue of who would be ultimately successful in the dispute is up to the Arbitrator to determine first.  As the Defendant argued before the State Court:

"*If the Court concludes that there is a valid agreement to arbitrate and that the matter falls within the scope of the arbitration clause, it must refer the case to arbitration without reviewing the merits*, **Paine Webber, Inc. vs. Hartmann**, *921 F 2d.507at 511 (3rd Cir 1990).*"

**Pa36**

In order to resolve the Defendant's motion, the Court must first determine if a valid and enforceable agreement to arbitrate exists.  If the agreement is enforceable, it is up to the arbitrator to make the decision.  If the Court determines that the agreement is not enforceable, the Court could determine the validity of the dispute.

**B.    The Plaintiff has a variety of causes of action against the Defendant, Option One.**

The Plaintiff still has a variety of causes of action against the Defendant, Option One, both as to the improper collection of prepayment penalties and as to the violations of the Truth in Consumer Contract, Warranty and Notice Act. ***N.J.S.A. 56:12-14 et seq.***

The Plaintiff has a valid cause of action against the Defendant for improper collection of the prepayment penalty.  The Supreme Court in the **Glukowsky** opinion only addressed the issue of the validity of the 1996 OTS

regulation and its preemptive effect.  As was noted by the Appellate Division, the Court did not address the issue under contract law that the penalty was an excessive charge, nor that the prepayment penalty was deceptive or unfair as defined by the FTC Act and therefore a violation of the New Jersey Consumer Fraud Act.

Further in the instant case, the Defendant collected the full prepayment fee even though the payoff was received approximately two months prior to its expiration.  This was true even though the Plaintiff offered to make the mortgage payment for the additional months so the Defendant would have the same benefit of the bargain as if the Plaintiff waited the extra month.

What is the most outlandish is the fact that this pay off occurred less than one month before the Appellate Division published its decision to hold the charge illegal. Yet the Defendant refused to refund the money because the case was on appeal.

The Plaintiff has a valid cause of action under the New Jersey Truth in Consumer Contract, Warranty and Notice Act.  *N.J.S.A. 56:12-14 et seq.*  The statute provides that a contract which includes a clause which seeks to waive a consumers' rights is voidable, subject to a civil penalty of not less than $100.00, actual damages, reasonable

7

attorney's fees and court costs.  ***N.J.S.A. 56:12-16 &
N.J.S.A. 56:12-17***  This cause of action goes directly to
the inclusion of the arbitration clause in the contract
which waives a consumer's right to a trial by a judge
and/or jury.

As the Supreme Court held in <u>Printing Mart-Morristown
v. Sharp Electronics Corp,</u> 116 NJ 739, 746 (1989)

> *We approach our review of the judgment below
> mindful of the test for determining the adequacy
> of a pleading: whether a cause of action is
> "suggested" by the facts.  **Velantzas v. Colgate-
> Palmolive Co.**, 109 N.J. 189, 192 (1988).  In
> reviewing a complaint dismissed under Rule 4:6-
> 2(e), our inquiry is limited to examining the
> legal sufficiency of the facts alleged on the
> face of the complaint.  **Rieder v. Department of
> Transp.**, 221 N.J. Super. 547, 552 (App.Div.1987)
> However, a reviewing court "searches the
> complaint in depth and with liberality to
> ascertain whether the fundament of a cause of
> action may be gleaned even from an obscure
> statement of claim, opportunity being given to
> amend if necessary." **Di Cristofaro v. Laurel
> Grove Memorial Park**, 43 N.J. Super. 244, 252*

8

*(App.Div.1957)  At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint.*  **Somers Contr. Co. v. Board of Educ.***, 198 F. Supp. 732, 734 (D.N.J. 1961)  For the purposes of analysis plaintiffs are entitled to every reasonable inference of fact.*  **Independent Dairy Workers Union v. Milk Drivers Local 680***, 23 N.J. 85, 89 (1956)  The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.*  **Id at 739.**

In the instant case the Plaintiff has more than suggested a cause of action against the Defendant.

There exist disputes between the parties.  The Court needs to address the issue of this motion to determine the proper forum for the dispute to be resolved.

    **C.    The Plaintiff has raised an issue of first impression concerning the applicability of the Truth in Consumer, Warranty and Notice Act.**

    The Plaintiff has raised issues concerning the Truth in Consumer Contract, Warranty and Notice Act **N.J.S.A. 56:12-14**.  As of this date no court has addressed the applicability of the Act to Arbitration clauses.  In fact most recently this Court in the case of **Rochel v. Cherry Hill Dodge**, *368 NJ Super 577 (App Div 2004)*, refused to consider the applicability of the Act as the Appellant had not raised the issue before the trial court.  Unlike **Rochel**, the Appellant in the instant case raised the matter before the trial court.

    It should be noted that the court in **Gras v. Associates First Capital, Corp.**, *346 N.J. Super 42 (App Div 2001)*, did not have before them, any arguments concerning the "Truth in Consumer Contract, Warranty and Notice Act".  In fact it would appear that the result in **Gras** would have been different as the act represents a clear legislative mandate and an overriding public policy that consumer rights can not be waived.

**II.   The arbitration clause is unenforceable as it seeks to waive a consumer's rights under the law in violation of the Truth-in-Consumer Contract, Warranty and Notice Act NJSA 56:12-14 et seq.**

The Truth-in-Consumer Contract, Warranty and Notice Act NJSA 56:12-14 et seq prohibits the enforcement of any contract provision in a consumer contract which violates a clearly established legal right of a consumer. **NJSA 56:12-14** states:

> *No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which* **includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.** *Consumer means any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes. The provisions of this act shall not apply to residential leases or to the sale of real estate, whether improved or not, or to the construction of new homes subject to "The New Home Warranty and Builders' Registration Act," P.L.1977, c. 467 (C. 46:3B-1 et seq.).*

In the instant case the Defendant has asserted that the Plaintiff has given up one of his most fundamental

rights which is a trial in the courts with a judge and
jury. In addition the Defendant also asserts that the
Plaintiff has waived his rights to proceed with a class
action lawsuit and that the Plaintiff has waived his rights
contrary to the **New Jersey Consumer Fraud Act N.J.S.A.
56:8-1 et. seq.** and the **Federal Arbitration Act (FAA) 9
USCA 1 et. seq.** for the court to determine what issues
should be subject to arbitration and be subject to paying
the Defendant's attorney's fees and costs.

The Truth-in-Consumer Contract, Warranty and Notice
Act NJSA 56:12-14 et seq is not pre-empted by the FAA as it
does not single out arbitration clauses for this treatment
but applies to any clause which seeks to have a consumer
waive a legal right in a contract. The U. S. Supreme Court
held in **Doctor's Associates, Inc. v.** **Casarotto**, 517 US 686
at 687 (1996) that the enforceability of an arbitration
clause is governed by state law as long as the law in
question does not single out arbitration clauses as
unenforceable.

Consumer contracts in New Jersey may not include a
provision which waives any consumers rights. This is the
fundamental issue which is not even addressed by the
Defendant. Statutes are not to be treated as a nullity. The
Legislature recognized when this act was passed that

12

businesses will continue to use their superior bargaining power to attempt to deprive consumers of their rights. The clear purpose of the statute is to attempt to address this imbalance. As a matter of law the court must hold that the agreement to arbitrate is unenforceable.

With the passage of the Truth-in-Consumer Contract, Warranty and Notice Act, the legislature made clear that consumer contracts which seek to waive a consumer's rights are unenforceable.  The language of the act is unequivocal. ***N.J.S.A. 56:12-14*** is very clear.

Consider the scope of the business covered by the act. "No seller, lessor, creditor, lender or bailee."  The scope of the act encompasses virtually every business activity. The only exception is to residential leases, sale of realty and the construction of new homes subject to the New Home Warranty and Builders Registration Act.  Otherwise there is no exception.  The class of consumers protected is just as broad, "to any consumer or prospective consumer."  The class includes not just actual customers but potential customers as well, in essence any person which has had or may have contact with the business.

The act prohibits any written consumer contract, written consumer warranty notice or sign to include any provision that violates any clearly established legal right of a consumer as established by state or federal law.

Article I Paragraph 9 of the New Jersey Constitution reads:

> *"The right of trial by jury shall remain inviolate; but the legislature may authorize the trial of civil causes by a jury or six persons."*

The 7th Amendment of the United States Constitution reads: *"In suits of common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."*

There is not a right more fundamental than a right to a trial by jury. The issue is not whether arbitration may satisfy due process but rather whether a consumer may be forced to waive his right to a trial by jury. The Act is clear, the answer is no.

Certainly the right to a trial by jury is at the forefront of the rights waived by the consumer but certainly not the only one. There is a denial of the public forum. An arbitration proceeding is a private

affair.  There is no ability for public scrutiny of the proceedings.  There is a limited right to appellate review of an arbitration proceeding.  There are rules which may limit discovery.  The Defendants have argued that the Plaintiff has waived his rights to act as a class representative and proceed with a class action lawsuit.

It was to protect consumers as a whole that the Truth-in-Consumer Contract, Warranty and Notice Act was adopted. As the sponsor's statement to the Act attested:

> "*Far too may consumer contracts, warranties, notices and signs contain provisions which clearly violate the rights of consumers.  Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights.*" **[Da 23]**

The purpose of the Act was to protect consumers from contracts of adhesion such as in the instant case.  In fact, the importance of this protection is further underscored by the damages provision of the statute.  The statute provides that a contract which includes a clause which seeks to waive a consumer's rights is voidable,

subject to a civil penalty of not less than $100.00, actual damages, reasonable attorney's fees and court costs. ***N.J.S.A. 56:12-16 & 17.*** There needs to be no ascertainable loss to the consumer for the penalty to apply, merely the inclusion of the offending language.

As a matter of law, the Truth-in-Consumer Contract, Warranty and Notice Act prohibits the inclusion of <u>any</u> clause which seeks to waive a consumer's rights.   The court must hold that the arbitration clause is unenforceable.

**III. The issue before the court is if under New Jersey Law a consumer may be compelled to arbitrate its claims as against a lender, such as Option One.**

The issue before the court is whether under New Jersey Law a consumer may be compelled to arbitrate its claims as against a lender such as the Defendant, Option One.  The Defendant has argued that public policy of this state favors arbitration and that the Plaintiff bears the burden of demonstrating that the claims herein are not suitable for arbitration.  The problem the Defendant has is that they are starting from a false premise.  The courts nationwide both state and federal first look at contract principles to determine if an arbitration clause is

16

enforceable.  **Mitsubishi Motors Corp v. Soler Chrysler-Plymouth, Inc.**, *473 U.S. 614 (1985)*  Undisputed by the Defendant is that the enforceability of an arbitration clause is governed by state law as long as the law in question does not single out arbitration clauses as unenforceable.

It is clear that the public policy in this state favors the protection of consumer rights.  The enactment of consumer protection legislation such as the Consumer Fraud Act*, N.J.S.A. 56:8-1 et. seq.* and The Truth-in-Consumer Contract, Warranty and Notice Act, *N.J.S.A. 56:12-14 et. seq.*, are just a few examples where the legislature has recognized that the playing field between consumers and business must be leveled.

This court recently in the case of **Rockel v. Cherry Hill Dodge**, *368 N.J. Super 577 (App.Div. 2004)*, held an arbitration clause unenforceable for failing to be unambiguous in its terms.  The court noted that the standard of review of arbitration clauses pursuant to **Gras v. Associates First Capital Corp.**, *346 N.J. Super 42, (App.Div. 2001) Cert Denied, 171 N.J. 445 (2002)*, was on a case by case basis.

> *"Two significant public policies must be*
> *harmonized.  Plaintiffs identify the first and*

*correctly assert that the policy behind the CFA is to 'root out consumer fraud.'  However, that policy must be balanced by a competing and compelling public policy favoring arbitration as a means of dispute resolution and requiring liberal construction of contracts in favor of arbitration."* **Citing <u>Gras</u> at 53-54.**

*"These policies are in or near equipoise.* ***Id at 54.*** *Finding that the tension between these policies precludes a brightline rule,* **<u>Gras</u>** *requires that arbitration provisions be examined on a case by case basis.  Such provisions may be enforced if they contain the appropriate attributes or disregarded if they do not."* **Id at 580.**

The Court in **<u>Rockel</u>** did not address the applicability of the Truth-in-Consumer Contract, Warranty and Notice Act as it was raised for the first time on appeal.  It is clear from the Court's holdings in **<u>Gras</u>** and **<u>Rockel</u>**, the public policy embodied by the Truth-in-Consumer Contract, Warranty and Notice Act would shift the balance in consumer

contracts to hold that arbitration clauses in consumer contracts are unenforceable.

**A. By passing the New Jersey Home Ownership Security Act of 2002.** *NJSA 46:10B-22 et.seq.,* **New Jersey has clearly established that the State's public policy does not favor arbitration clauses in a mortgage contract.**

The state has recently enacted the New Jersey Home Ownership Security Act of 2002. *NJSA 46:10B-22 et. seq.* The legislature passed this act because of the increasing problem of abusive mortgage lending in this state.

> "*As competition and self-regulation have not eliminated the abusive terms from loans secured by a consumer's home, the consumer protection provisions of this act are necessary to encourage lending at reasonable rates with reasonable terms.*" *NJSA 46:10B-23(c)*

Arbitration clauses such as used by the defendant in this case are specifically held to be unconscionable and void. *NJSA 46:10B-26(e)* states:

> "*Without regard to whether a borrower is acting individually or on behalf of other similarly situated, any provision of a high cost home loan agreement that allows a party to require a borrower to assert any claim or defense in a forum that is less convenient, more costly, or more dilatory for the resolution of a dispute than a judicial forum established in this state if the borrower may otherwise properly bring a claim or defense or limits in any way any claim or defense the borrower may have is unconscionable and void.*"

The arbitration forum in the instant case is certainly prohibited under the act.  According to AAA rules, the parties must pay the costs of the arbitrator at a rate of $250.00 for a telephone hearing to $750.00 per day for an in-person hearing, filing fees of $750.00 and a case service fee of $300.00.  This should be compared with a filing fee for court of $200.00 for a complaint and $135.00 for an answer.  The arbitration clause in the instant case is clearly covered and prohibited under the laws.

The instant loan is a high cost loan as defined by the statute.  *NJSA 46:10B-24* defines a high-cost home loan as "a home loan for which the principal amount of the loan does not exceed $350,000,000.00, in which the terms of the loan meet or exceed one or more of the thresholds as defined in this section."

The total fees and point threshold under the statute is 5% of the total loan.  *NJSA 46:10B-24*  In the instant case the total fees and points equal $14,536.86 or 6.54% of the total loan far in excess as allowed under the act.

As a matter of law the clause is unconscionable and void pursuant to public policy established by the New Jersey Home Ownership Security Act of 2002.

**IV.  The arbitration clause is unenforceable as it is not written in plain language in violation of NJSA 56:12-1 et seq.**

All consumer contracts must be written in plain language. **NJSA 56:12-2** states:

*A consumer contract entered into on or after the effective date of this amendatory and supplementary act shall be written in a simple, clear, understandable and easily readable way.*

The arbitration agreement is not written in plain language. One example is the language in the agreement which reads "**If you have any questions, you should consult your own lawyer before you sign this Agreement"**.  In context to the situation this clause makes no sense. Are you required to sign the agreement to get the loan? Can you wait to sign this agreement until you have consulted with a lawyer? What is the impact of signing this agreement?

**NJSA 56:12-10**  provides the standards to be applied to the contract to determine if a contract is in plain language.

§ *56:12-10. Guidelines.*

*a. To insure that a consumer contract shall be simple, clear, understandable and easily readable, the following are examples of guidelines that a court, the Attorney General or the Commissioner of Insurance, in regard to contracts of insurance provided for in subsection c. of section 1 of this act (C. 56:12-1c.), may consider in determining whether a consumer contract as a whole complies with this act:*

*(1) Cross references that are confusing;*

*(2) Sentences that are of greater length than necessary;*

*(3) Sentences that contain double negatives and exceptions to exceptions;*

*(4) Sentences and sections that are in a confusing or illogical order;*

*(5) The use of words with obsolete meanings or words that differ in their legal meaning from their common ordinary meaning;*

*(6) Frequent use of Old English and Middle English words and Latin and French phrases.*

*b. The following are examples of guidelines that a court, the Attorney General or the Commissioner of Insurance, in regard to contracts of insurance provided for in subsection c. of section 1 of this act (C. 56:12-1c.), may consider in determining whether the consumer contract as a whole complies with this act:*

*(1) Sections shall be logically divided and captioned;*

*(2) A table of contents or alphabetical index shall be used for all contracts with more than 3,000 words;*

*(3) Conditions and exceptions to the main promise of the agreement shall be given equal prominence with the main promise, and shall be in at least 10 point type.*

The "Agreement" simply is not written in plain language. Just try to make sense of the paragraph titled "**Exceptions**" takes a law degree. Most of that language has meaning only to a lawyer. The average person would not understand what is meant by such *concepts as deed of trust,*

*setoff rights, provisional or ancillary remedies, replevin, sequestration, injunctive relief or unlawful retainer* (**sic**) as examples.  The language of waiving rights to a judge and jury is incomplete. The waiver includes a waiver of the right to a full judicial appeal of the record and law used by the arbitrator. Certainly the "waiver" of class actions in court as claimed by the Defendant is not written in plain language. No where in the document is such a simple statement made.

As a matter of law the Court must not enforce the Arbitration Agreement as it is written in violation of the law.

**V.   The defendant has waived its right to arbitrate as it refused to commence the arbitration after notice and an opportunity to proceed.**

During the summer of 2003, the defendant requested that the plaintiff's previous complaint be dismissed to allow the defendant to proceed in arbitration.  On August 12, 2003 the plaintiff dismissed the action without prejudice.  The Defendant now argues that the defendant lacked standing to commence an arbitration action.  This position is not supported by the AAA rules.  The rules are

clear that any party to a dispute may commence an action.
The rule states:

> *"C-2 Initiation under an Arbitration Agreement*
> *(a) the filing party (the "claimant") must notify*
> *the other party (the "respondent") in writing,*
> *that it wishes to arbitrate a dispute.  This*
> *notification is referred to as the "demand" for*
> *arbitration.  The demand should: briefly explain*
> *the dispute; list the names and addresses of the*
> *consumer and the business; specify the amount of*
> *money involved; and state what the claimant*
> *wants.*
> *The claimant must also send two copies of the*
> *demand to the AAA at the time it sends the demand*
> *respondent.  When sending a demand to the AAA,*
> *claimant must attach a copy of the arbitration*
> *agreement from the consumer contract with the*
> *business.  The claimant must also send the*
> *appropriate administrative fees and deposits."*
> *(Plaintiff Exhibit A- AAA  Consumer rules )*

On August 11, 2003 the defendant requested the within
dispute be submitted to arbitration.  The AAA rules require
that the party seeking arbitration initiate the action.
The plaintiff dismissed the complaint without prejudice.
At the time of the motion was heard, over six (6) months
later the defendant still had failed to initiate the
arbitration pursuant to AAA rules.

The choices of the procedures to arbitration were
selected by the defendant.  Now they seek to argue that
these very rules do not apply.  The rules require the party
demanding the arbitration to initiate the action.  There is
no provision in the arbitration agreement or rule which

would require the plaintiff to initiate the action.  The
defendant failed to initiate an action in arbitration.  The
plaintiff is required to cooperate with the action once
commenced.  No action by the defendant was commenced.  The
defendant has waived its right to go forward to arbitrate
any issues.

The agreement provided that a request to arbitrate be
done within sixty (60) days of the complaint.  The AAA
rules define what else must be done with the demand to
arbitrate.  The defendant has failed to do any of those
things.  The defendant had an obligation to go forward and
failed to do so even to this day. As a matter of law the
defendant has waived its right to arbitrate.


**VI.   The arbitration clause in this contract is
        unenforceable.**

**a. The clause is unenforceable under the Federal
   Arbitration Act.**

The **Federal Arbitration Act's** (**FAA**) **9 USC 1-16**
requirement that arbitration clauses be enforced does
not apply in five general situations:

1.   When the FAA does not apply to the arbitration
     agreement;

2.   When no valid agreement to arbitrate exists;

3.   When a valid agreement exists, but its terms do
     not apply to the claim;

4.   When enforcing the arbitration clause would
     conflict with the purpose of the federal statute
     upon which the claim is based; or

5.   When the agreement to arbitrate resulted from
     fraud, excessive economic power, or some other
     factor that would provide grounds under law for
     denying the enforcement of any contract or
     clause.

In deciding whether an agreement to arbitrate exists, the Supreme Court of the United States has instructed the Courts to look to state law governing the formation of contracts.  **First Options of Chicago, Inc. v. Kaplan**, *514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed 2d 985 (1995)*


### i. Unconscionability of non-mutuality of claims

This arbitration clause requires that the consumer disputes the plaintiff might have, must be submitted to arbitration but it reserves the rights of the defendant creditor to engage in self-help repossession and foreclosure without having to submit the dispute to arbitration.  This clause may reflect the fact that most corporations do not actually favor arbitration as a method

26

to effect dispute resolution with respect to disputes in which they are interested.

The leading case dealing with these one-sided clauses coupled with the typical procedural aspects of a consumer negotiation and *unconscionability* is **Arnold v. United Companies Landing Corp.**, *204 W. Va. 29, 511 S.E. 2nd 854 (1998)* wherein the West Virginia Supreme Court held that a national corporate lender and unsophisticated consumer executed a contract that included an arbitration clause. The clause required the consumer to submit any claims they might have to arbitration, but permitted the lender to go to court to collect the debt owed.  The court described this as the sort of deal that might be reached by a rabbit and a fox, and held that it unreasonably favored the lender:

> "*United Lending's acts or omissions could seriously damage the Arnolds, yet the Arnolds only recourse would be to submit the matter to binding arbitration.  At the same time, United Lending's access to the courts is wholly preserved in every conceivable situation where United Lending would want to secure judicial relief against the Arnolds.*" **Id at 861**

The Court concluded that this Agreement was unconscionable and unenforceable.  **Id at 862**

### ii. The potential for high arbitration fees makes the agreement unconscionable

The Arbitration clause in this case does not set out any information for the plaintiff to make a determination as to what his arbitration costs should be.

The clause is set out on page two of defendant's brief.  It does, however, provide that "if either party, you or we, fails to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorneys fees, incurred by the other party compelling arbitration."

Due to the wording of the clause listed above, the plaintiff now faces paying defendants costs, including attorney's fees for the arbitration.

There is a line of recent cases from federal and state courts that have reasoned that complete uncertainty on the central issue of the costs and fees of pursuing a claim make it likely that many plaintiffs with small claims such as this would be deterred from pursuing their rights.

See **Myers v. Terminix Intl. Co.,** *91 Ohio Misc 2d 41, 697 N.E. 2d 277 (1998).*  In that case the fees were found

to be not only excessive, but not disclosed to the consumer in the original arbitration agreement.

The clause provides that the parties have selected the American Arbitration Association pursuant to its commercial Arbitration Rules.  A copy of those rules are attached as Exhibit "E" and provide that a non-refundable filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed.  The schedule provides that since the plaintiff's claim  is under $10,000, the initial administrative filing fee is $500.00. Arbitrator compensation is not included in the schedule and can be listed as an unknown.  The above fees do not cover the rental of hearing rooms which are available on a rental basis.  Unless the parties agree otherwise, which is not part of this Arbitration Agreement, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

Section E-7 provides that where no parties claim exceeds $10,000.00, exclusive of interest and arbitration costs, and in other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitration determines an oral hearing is necessary.

The American Arbitration Association also offers Arbitration of Consumer Related Disputes under $10,000.00 which is separate from the commercial arbitration rules and much more modest cost.  The consumers must accompany a request for arbitration with $125.00 as their portion of the arbitrator's fee.  The business pays a $500.00 administrative fee.  The business is also required to pay all other fees and costs relating to the arbitration including a fee of $100.00 for a telephonic hearing if one is requested.  Obviously the parties did not bargain for the imposition of the "commercial" arbitration rules as they adversely impact the plaintiff financially.

### iii. Waiver of right to bring class Action is unconscionable

Class action proceedings are often necessary for plaintiffs with small claims to sustain an economically viable cause of action against a lender.  The arbitration clauses are standard form contracts of adhesion and businesses abuse their superior bargaining power by securing a waiver of the consumer's rights to bring class action claims.

A number of state and federal courts have held that a class action waiver is evidence of an arbitration clause's

substantive unconscionability.  In **Powertel, Inc. v. Bexley**, *743 So. 2d 570 (Fla. Dist. Ct. App. 1999)* a Florida Intermediate appellate court struck down an arbitration clause in part because it would prohibit class actions. The court also took into consideration the adhesive nature of the contract.  As to the prohibition on class actions, the court said at page 576:

> *"class litigation provides the most economically feasible remedy for the kind of claim asserted here.  The potential claims are too small to litigate individually, but collectively they might amount to a large sum of money.  By requiring arbitration of all claims, **Powertel** has precluded the possibility that a group of its customers might join together to seek relief that would be impractical for any of them to obtain alone."*

The arbitration clause in **Powertel** was held to be substantively unconscionable and therefore unenforceable. See **Lozada v. Dale Baker Oldsmobile, Inc.**, *91 F. Supp. 2d 1087, 1104-05 (W.D. Mich. 2000)* which held its arbitration clause unconscionable for violation of the state consumer protection statutes' explicit provision of class-wide

recovery. More recently the U.S. Court of Appeals for the 9th Circuit in the case **Ting v. ATT,** Docket No. CV 01-2969 decided February 11, 2003 held that the arbitration clause which sought to prohibit class actions was "manifestly one-sided and therefore substantively unconscionable".  To the extent that the within clause represents a waiver of the right to be a class representative, it is unconscionable.


### iv. The arbitration clause is Unconscionable under loser pays analysis

Under the **New Jersey Consumer Fraud Act**, *N.J.S.A. 56: 5-2*, the act conflicts with the provision in the Arbitration Clause that states that "If either party, you or we, fails to submit to arbitration following a proper demand to do so, that party shall bear all costs and expenses, including reasonable attorneys fees, incurred by the other party compelling arbitration."

The statutory scheme set up by the Consumer Fraud Act presumes that a plaintiff or defendant in a judicial forum would pay his or her own costs and if the plaintiff or counterclaimant is successful he could be awarded treble damages, counsel fees and costs.  There is no provision for

the non-prevailing party to pay the other parties costs and counsel fees.

The clause in the Arbitration Agreement is in effect a "Loser Pays Rule" and would discourage most consumers from pursuing their claims regardless of their merit and therefore should render the clause unconscionable.

In **Sosa v. Paulos,** *924 P. 2d 357, 362 (Utah 1996),* the Utah Supreme Court considered an arbitration clause requiring a medical malpractice plaintiff to pay the litigation costs of the doctor if the plaintiff recovers less than one-half the amount of damages sought.  The court held that the provision was substantively unconscionable and stated "we find no precedent in law for an award of attorney's fees to the loser in malpractice arbitration, and we hold that such a contractual clause embedded in a negotiated agreement is not only substantively unconscionable but also against public policy."  **Sosa v. Paulos**, *924 P. 2d 357, 362 (Utah 1996).*

More recently the U.S. Court of Appeals for the 9th Circuit in the case **Ting v. ATT,** Docket No. CV 01-2969 decided February 11, 2003 held that the arbitration clause which sought to split fees for arbitration  was unconscionable.

**B. The court should refuse to enforce the agreement to arbitrate**

In **Volt Info. Services, Inc. v Bd of Tr.**, *489 U.S. 468, 109 S. Ct. 1248 (1989)* the U.S. Supreme Court said that the primary purpose of the Federal Arbitration Act was to insure that private agreements to arbitrate are enforced according to their terms. Therefore, if an Agreement to arbitrate cannot be enforced according to its terms, a court should refuse to enforce it.

Businesses are aggressively using arbitration clauses in their standard form contracts to prevent consumers from asserting claims on a class-wide basis.

The California Supreme Court stated in **Keating v. Superior Court**, *645 P. 2d 1192, 1207 (Cal. 1982)* that this type of practice has the potential to undermine the ability of consumers to vindicate their legal rights.

> "*Arbitration clauses frequently appear in standardized contract of adhesion. A primary consideration which has led courts to uphold such clauses, despite the adhesive nature of the contract, is the belief that arbitration is not oppressive and does not defeat the reasonable expectation of the parties. If, however, an arbitration clause may be used to insulate the drafter of an adhesive contract from any form of class proceeding, effectively foreclosing many individual claims, it may well be oppressive and may defeat the expectations of the non-drafting party.*" Id. at 1207

### i. Arbitration disadvantages

A great disadvantage of an arbitration proceeding for a consumer is that it sharply limits his ability to obtain meaningful discovery.  The scope of discovery is left to the discretion of the arbitrator.  Restrictions on discovery also mean that an individual plaintiff cannot determine if a practice is a general pattern.  Limiting discovery in a case to just basic document production also makes it difficult for individual plaintiffs to prove their own claims.

The arbitration agreement as a matter of law should not be enforced. The agreement fails to meet three (3) of the five criteria that must be met for the court to enforce the agreement. Failing any one of which alone is enough to deny the Defendant's motion to compel arbitration.

First, there does not exist a valid arbitration agreement. The Plaintiff has demonstrated that the agreement itself fails due to the unconscionability of the non-mutuality of claims subject to arbitration. The Defendant is free to bring any claim against the Plaintiff in a court of law. The Plaintiff's only forum for relief is to arbitrate. **Arnold v. United Companies Landing Corp**, *204 W. Va. 29, 511 S.E. 2nd 854 (1998).*

Second, the issues raised by the Plaintiff in the form of a class action suit are not subject to arbitration by the terms of the agreement. The language of the arbitration clause as drafted by the Defendant specifically exempts class actions from being arbitrated. The only forum left to resolve the issues raised by the Plaintiff would be before the Superior Court.

Third, the terms of the arbitration clause are in violation of public policy as it requires that the "loser pay" in violation of the New Jersey Consumer Fraud Act. This defendant's attempt to insulate themselves from statutory consumer protections.

Fourth, the terms of the arbitration clause are the result of fraud, and excessive economic power. The facts of the case are overwhelming in this regard. The Plaintiff is a person who was under tremendous pressure to close the transaction to purchase his home. The Defendant is a multi-billion dollar corporation which gave him a devil's choice to sign the agreement or not close the transaction. An agreement presented to him for the first time at the closing of the loan. An agreement which waives all of his rights to judicial process, has a fee shifting provision, and increases the cost to resolve any claims. He had no notice that such a document was required to get the loan

prior to the closing. In every way, this Plaintiff was taken advantage of by the Defendant.

**VII. Assuming arguendo the arbitration clause is enforceable, the plaintiff's claims are not subject to arbitration.**

      **a. The plaintiff's class action is not subject to arbitration.**

The plaintiff's complaint, seek class certification of the claims herein.  The arbitration clause states:

> *"Only disputes involving you and us may be addressed in the arbitration.  The arbitration may not address any dispute on a class action basis.  This means that the arbitration may not address disputes involving other persons which may be similar to the disputes you and us."(Pa78)*

It is clear from the terms of the agreement that there can be no class <u>arbitration</u>.  This is <u>not</u> the same as saying that the plaintiff waives its right to be a class representative.

The only forum available for the class action remains the courts.  There is no subject matter jurisdiction in the arbitration to hear the class action claims.  The defendant is wrong to argue that any of the language in this

transaction is a waiver of the plaintiff's rights to proceed as a class representative.  The plain language of the arbitration agreement is clear; there can be no class action arbitration not a provision which waives the plaintiff's right to be a class representative.

**b. The arbitration clause specifically exempts injunctive relief from issues subject to arbitration.**

Count IV of the plaintiff's complaint seeks injunctive relief reforming all existing notes and mortgages to strike and void the prepayment addendum.  The plain language of the arbitration agreement states that such disputes are not subject to the agreements.  Specifically on page two under the heading "Exceptions" the contract reads:

> *"Exceptions – The following are not disputes subject to this Agreement:…(3) provisional or ancillary remedies with respect to the loan or any collateral for the loan such as injunctive relief...This means that nothing in this Agreement shall limit your right or our right to take any of these actions." (Pa79)*

The plain language of the document provides that injunctive relief is <u>specifically</u> excluded from arbitration.  The agreement was drafted wholly by the

defendant.  This is disingenuous of the defendant to argue otherwise.

### c. The Defendant's request to dismiss the complaint is improper.

#### i. The FAA provides explicitly that the action should be stayed pending the completion of arbitration.

The defendant has argued that the instant agreement is Controlled by the FAA.  **9 U.S.C. 3** provides that a case shall be stayed pending completion of the arbitratable issues.

**9 U.S.C. 3** stay of proceedings where issue therein referable to arbitration:

> "*If any suit or proceeding be brought in any of the courts of the U.S. upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with arbitration.*"

Under the FAA, the court would send the issues subject to arbitration to be arbitrated.  The issues not subject to arbitration would proceed in the court.  No trial would be scheduled until the arbitration is completed.

### ii. The court, for purposes of judicial economy, could hear the full case.

The New Jersey Supreme Court has recently explained that "[j]ust as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration." **Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A.**, *168 N.J. at 137*. In **Garfinkel**, the Supreme Court found that the plaintiff was not required to submit his New Jersey Law Against Discrimination claim to arbitration despite an arbitration agreement between the parties, because the parties arbitration agreement was "insufficient to constitute a waiver of plaintiff's remedies under the LAD." **Id. at 134**

After reaching that conclusion, the Court was faced with the issue of whether the plaintiff's common law claims (which were apparently subject to arbitration pursuant to the parties' arbitration agreement) should be bifurcated and sent to arbitration or heard together with LAD claims in the Superior Court. The Supreme Court held that the joinder of all claims in a single Law Division action was preferable to the "piecemeal" treatment of the claims that would result by separating and sending to arbitration those

40

causes of action that were arbitrable and leaving the LAD claims in court.  **Id. at 137**

   These same policy considerations that led the Supreme Court to order that all claims were to be litigated in **Garfinkel** weigh even more heavily in favor of non-bifurcation in this case.  While there would have certainly been some duplication of proofs between the plaintiff's common law and LAD claims in **Garfinkel**, those claims were nonetheless separate and distinct claims with different elements necessary to prove a prima facie case for each. Notwithstanding, the Supreme Court found that all of the claims should be tried together in a single Law Division action.  Unlike **Garfinkel**, in this case only the remedy sought by plaintiff differs.  Plaintiff's proofs will be identical in seeking injunctive relief and monetary damages because the basis justifying the relief sought is identical.  Accordingly, in order to prevent the "anathema" described by the Supreme Court in **Garfinkel**, the equities mandate that all of plaintiff's claims be heard together by this court.

**Conclusion**

The arbitration agreement as a matter of law should not be enforced.  Fundamentally, the clause is in clear violation of the New Jersey The Truth-in-Consumer Contract, Warranty and Notice Act NJSA 56:12-14 et seq. The purpose of this act was to protect consumers from just this kind of attempt by a business to insulate themselves from statutory consumer protections. This alone is enough to justify a reversal of the trial court.

The agreement fails to meet three (3) of the five criteria that must be met for the court to enforce the agreement. Failing any one of which alone is enough to deny the Defendant's motion to compel arbitration.

First, there does not exist a valid arbitration agreement. The Plaintiff has demonstrated that the agreement itself fails due to the unconscionability of the non-mutuality of claims subject to arbitration. The Defendant is free to bring any claim against the Plaintiff in a court of law. The Plaintiff's only forum for relief is to arbitrate. Arnold v. United Companies Landing Corp, 204 W. Va. 29, 511 S.E. 2nd 854 (1998).

Second, the issues raised by the Plaintiff in the form of a class action suit and injunctive relief are not

subject to arbitration by the terms of the agreement. The language of the arbitration clause as drafted by the Defendant specifically exempts class actions and injunctive relief from being arbitrated. The only forum left to resolve the issues raised by the Plaintiff would be before the Superior Court.

Third, the terms of the arbitration clause are in violation of public policy as it requires that the "loser pay" in violation of the New Jersey Consumer Fraud Act and the Federal Arbitration Act. The Defendant's attempt insulate themselves from statutory consumer protections.

Fourth, the terms of the arbitration clause are the result of fraud, and excessive economic power. The facts of the case are overwhelming in this regard. The Plaintiff was under tremendous pressure to close the transaction to purchase his home. The Defendant is a multi-billion dollar corporation which gave him a devil's choice to sign the agreement or not close the transaction. An agreement which waives all of his rights to judicial process, has a fee shifting provision, and increases the cost to resolve any claims. He had no notice that such a document was required to get the loan prior to the closing. In every way, this Plaintiff was taken advantage of by the Defendant.

The Courts have a duty to protect the public from the predatory practices of the Defendant. As a matter of law the Defendant's motion to compel arbitration must be denied.

Respectfully submitted,

/s/Lewis G. Adler, Esq.         /s/Louis D. Fletcher, Esq.
Lewis G. Adler, Esq.            Louis D. Fletcher, Esq.

/s/Roger C. Mattson, Esq.

Roger C. Mattson, Esq.